# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RUFUS LOVELL BROOKS,**

        **Plaintiff,**

**v.**                                                      **Case No: 6:17-cv-664-Orl-37GJK**

**MOBILITIE MANAGEMENT, LLC,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

> **MOTION:**    **DEFENDANT MOBILITIE MANAGEMENT, LLC'S, MOTION FOR SUMMARY JUDGMENT (Doc. No. 32)**
>
> **FILED:**     **April 16, 2018**
>
> **THEREON** it is recommended that the motion be **GRANTED**.

### I.  BACKGROUND.

On May 18, 2017, pro se Plaintiff filed an amended complaint against Defendant alleging employment discrimination based on his race and retaliation. Doc. No. 11. Plaintiff alleges that the discrimination and retaliation manifested in Defendant refusing to interview and hire him, even though he applied for over eighty positions. *Id.* Plaintiff alleges that Defendant offered to interview and hire him until Defendant's employees viewed Plaintiff's LinkedIn profile and learned that he is African American. *Id.*; Doc. No. 36 at 1-2. Plaintiff also alleges that Defendant retaliated against him by refusing to hire him because he picketed Defendant's office and filed an Equal Employment

Opportunity Commission ("EEOC") charge against Defendant. Doc. No. 11 at ¶ 28. Based on these allegations, Plaintiff asserts three counts against Defendant: Count I, for discrimination based on race; Count II, for Defendant's race discrimination purportedly done through its staffing agency; and Count III, for retaliation. *Id.* at 10-13. Plaintiff asks that the Court award him back pay, front pay, "past and future pecuniary losses," punitive damages, and attorney's fees and costs. *Id.* at 14-15.

On April 16, 2018, Defendant filed a motion for summary judgment (the "Motion"). Doc. No. 32. On May 4, 2018, Plaintiff filed his memorandum in opposition to the Motion (the "Response"). Doc. No. 36. On May 18, 2018, Defendant filed its reply to the Response (the "Reply"). Doc. No. 40.

## II.     STANDARD OF REVIEW.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Liberty Lobby, Inc.,* 477 U.S. at 257; *see* Fed. R. Civ. P. 56(c). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). In resolving a summary judgment motion, the Court must view the record evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

Argument "that a fact cannot be or is genuinely disputed" must be supported by particular citations or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys. in Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (explaining that the movant may point to an absence of evidence to support an issue on which the non-movant bears the burden of proof at trial). The court may consider an asserted "fact undisputed for purposes of the motion" if such fact is not properly supported or addressed, and it "need consider only the cited materials . . . ." Fed. R. Civ. P. 56(c)(3), (e)(2).

The court must view the cited material and all reasonable inferences drawn from such material in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). If a reasonable jury could find for the non-moving party on the cited evidence, then there is a genuine factual dispute. *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The "court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592–94 (1986)).

### III.   ANALYSIS.

Employers may be sued for intentionally discriminating against a person based on race and for injuriously retaliating against a person because he opposed such an unlawful employment practice. 42 U.S.C. §§ 2000e–2(a)(1)(2), 2000e–3(a)); 42 U.S.C. §§ 1981, 2000e–5(f). Intentional discrimination and retaliation claims share the same elements under § 1981 and Title VII. *Rice–Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

The focus of retaliation and most discrimination claims is to determine whether unlawful "animus motivate[d] a challenged employment decision." *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (quoting *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)). Animus is an issue of fact that the plaintiff may prove with direct or circumstantial evidence. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1185 (11th Cir. 1984) ("Intentional discrimination is an issue of fact."); *see also Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) ("A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof.").

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when a plaintiff relies solely on circumstantial evidence, the plaintiff may raise a rebuttable presumption that the employer acted illegally by establishing a prima facie case. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264–65, 68 (11th Cir. 2010). The methods of presenting a prima facie case "are flexible and depend to a large degree upon the employment situation." *Wilson*, 376 F.3d at 1087.

"When the plaintiff establishes a prima facie case, which creates the presumption of discrimination, the burden of production shifts to the [defendant] to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant meets this burden of production, then the plaintiff must produce evidence that the legitimate, nondiscriminatory reason was a pretext. *Id.* Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

"[A] plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his

employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Defendant does not dispute that Plaintiff is a member of a protected class and "that a member outside of his protected class filled some of the jobs for which he applied." Doc. No. 32 at 14.

    A.    <u>Plaintiff's Factual Assertions</u>

In support of his discrimination claims, Plaintiff relies on the following: (1) his LinkedIn profile reveals that he is an African-American male; and (2) Defendant cancelled interviews with him and job offers to him.[1] Doc. No. 11; Doc. No. 36. The Response contains many factual assertions, and the only support offered for these assertions are the documents attached to the Response. Doc. No. 36. Bearing in mind that Plaintiff is pro se, the Response and its exhibits are read liberally. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("[P]*ro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally."). The Court is not permitted to act as Plaintiff's advocate and put forth arguments on his behalf, however. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (liberality afforded pro se litigants does not allow the court act as the party's attorney or to rewrite the party's pleading to maintain the action).

Plaintiff asserts that he applied for several positions with Defendant and after receiving an email from Defendant's recruiter, Megumi Inoue, regarding an interview, he expressed his interest in becoming a construction manager for Defendant. Doc. No. 36 at 6. Plaintiff cites Exhibit B in support, but Exhibit B is a Certificate of Authenticity from LinkedIn, followed by several LinkedIn profiles, including Inoue's. Doc. No. 36-3. Plaintiff then states that he "thought it was such a great

---

[1] In his deposition, Plaintiff also asserts that people know his race because of his first name. Doc. No. 32-2 at 146:19-25.

opportunity to work for Defendant that he agreed to pay his travel expenses to attend the interview." Doc. No. 36 at 6. Plaintiff states that the interview was canceled two days before it was scheduled to occur, but other applicants' interviews were not canceled. *Id.* Plaintiff cites Exhibit C for support, but Exhibit C includes an offer letter from Wireless Turnkey Operations ("WTKO"); emails between WTKO and Plaintiff regarding an offer to work in Costa Mesa, California, for Defendant that was subsequently rescinded; and a letter from WTKO extending an offer for a construction manager position for Defendant in south Florida. Doc. No. 36-4.

Next, Plaintiff asserts that Defendant's recruiters contacted him several times and was "told that his qualifications met a position they were recruiting for, and again interviews were canceled." Doc. No. 36 at 6. Plaintiff cites Exhibit D, which is another Certificate of Authenticity from LinkedIn and a document containing pictures of people, their names, and their titles, and dates or descriptions of dates, such as "2m agoHomepage." Doc. No. 36-5. Plaintiff does not explain what Exhibit D purports to represent.

Plaintiff states, without citation, that Defendant twice offered him a job and then rescinded the offers. Doc. No. 36 at 6. Plaintiff asserts that the guidelines in Defendant's "Successful Recruit" policy (the "Guidelines") were not in place until November 2015. *Id.* at 6-7. Plaintiff states that Defendant admitted this in its Exhibit A to the Motion. *Id.* at 7. In Exhibit A to the Motion, which is the affidavit of Defendant's Senior Vice President of Human Resources, Robert Fitt (the "Fitt Affidavit"), Fitt states that the Guidelines were in place in 2015, 2016, and 2017. Doc. No. 32-1 at ¶ 8.

Plaintiff states that he applied for thirty-eight positions with Defendant before the Guidelines were in effect and cites to the Fitt Affidavit and Exhibit F to the Response. Doc. No. 36 at 7. The Fitt Affidavit lists the dates that Plaintiff applied to each of Defendant's jobs, and

Exhibit F to the Response is a document from Defendant titled "The Successful Recruit." Doc. No. 32-1 at 6-10; Doc. No. 36-7. The first page of Exhibit F has "November 2015" on it. Doc. No. 36-7 at 2.

Plaintiff states that after the Guidelines were in effect, "Defendant's staffing agent" offered him a job and cites Exhibit G to the Response, which is an offer letter from WTKO to work in Defendant's office in Costa Mesa, dated January 12, 2016, and emails from a jobvite.com email address dated October 8, 2015, first seeking to set up an interview and then explaining that the previous email was sent in error. Doc. No. 36 at 7; Doc. No. 36-8. Finally, Plaintiff states that he had two scheduled interviews that were cancelled after Defendant's employees viewed his profile on LinkedIn. Doc. No. 36 at 8. In support, Plaintiff cites Exhibit H to the Response, *id.*, which consists of emails between Plaintiff and various people from September and October of 2015 regarding scheduling and canceling interviews for jobs. Doc. No. 36-9.

From the many assertions of fact in the Response, Plaintiff establishes for summary judgment purposes the following: that Defendant offered him an interview, that he secured a position, that Defendant's employees viewed his profile on LinkedIn, and that the interviews and job offer were revoked. The other facts stated in the Response are lacking any support and are rejected. Although Defendant argues that all the exhibits attached to the Response, except for Exhibits E and F, should be disregarded, Doc. No. 40 at 7-8, it is possible that Plaintiff can convert the information in Exhibits A, B, C, D, G, and H into admissible evidence if a proper foundation is laid, and thus the information in the exhibits can be considered in determining the Motion. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (hearsay could be considered in ruling "on a motion for summary judgment if the statement could be 'reduced to admissible evidence at

trial' or 'reduced to admissible form.'" (quoting *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir.1999)).

      B.      <u>Count I Race Discrimination</u>

The first step in the *McDonnell Douglas* analysis is whether Plaintiff can establish a prima facie case. *Alvarez*, 610 F.3d at 1264–65, 68. The only element of the prima facie case that appears to be in dispute is whether Plaintiff was qualified for the positions he applied for. *Holifield v. Reno*, 115 F.3d at 1562; Doc. No. 32 at 14.

Plaintiff testified that he was twice selected for an interview with Defendant. Doc. No. 32-2 at 178:17-21. Plaintiff also testified that he was offered a position either working for Defendant or working on a project for Defendant. *Id.* at 206:14-25. The Fitt Affidavit stating the following:

> [Defendant] did not extend an offer to interview, did not extend an offer of employment or rescind any offers to interview to [Plaintiff] for the positions to which he applied because he was not a qualified candidate pursuant to the Success Recruit Policy, because the position was canceled or not filled, or a combination thereof.

Doc. No. 32-1 at ¶ 18. Thus, there is a genuine issue of material fact regarding whether Plaintiff was offered a job by Defendant. A reasonable inference could be drawn in Plaintiff's favor that he was qualified to work for Defendant based on his testimony that he was offered a position either with Defendant or working on a project for Defendant. *See Pollocks v. Sunland Training Ctr.*, 85 F. Supp. 2d 1236, 1247 n.18 (N.D. Fla. 2000) (finding plaintiff was qualified for position because she was offered and accepted the position). At the summary judgment stage, Plaintiff established a prima facie case of discrimination.

The burden of production now shifts to Defendant to provide a legitimate, non-discriminatory reason for not hiring Plaintiff. *Wilson*, 376 F.3d at 1087. Defendant offers three reasons why Plaintiff was not interviewed or hired: (1) Plaintiff did not meet the Guideline of

living within a one-hour or 50-mile commute to the job location; (2) Plaintiff did not meet the Guideline of a history of remaining at a job for at least twenty-four months; and (3) Defendant decided not to fill some of the positions that Plaintiff applied for. Doc. No. 32 at 16-17; Doc. No. 32-1 at ¶ 18. Defendant argues that Plaintiff fails to demonstrate that these reasons are a pretext. *Id.* at 18-20.

Plaintiff does not argue that he meets the Guidelines, but he repeatedly argues that they became effective in November 2015, which was after he applied for positions with Defendant. Doc. No. 36 at 7, 8. Plaintiff also argues that after the Guidelines were in place, Defendant offered him a job. *Id.*

Plaintiff did not cite any evidence supporting these arguments. *Id.* After combing the attachments to the Response, the only support found for these arguments is a document titled "The Successful Recruit," which contains the Guidelines, and has a date on the first page of November 2015, Doc. No. 36-7 at 2, 4, and a letter from WTKO dated January 12, 2016, offering him employment at Defendant's office, Doc. No. 36-8 at 2.

To refute these arguments, Defendant attached the affidavit of its Vice President of Human Resources, Brooke Dumhart, to the Reply. Doc. No. 40-1. Dumhart states that Defendant has employed her since April 1, 2008, and that the Guidelines have been "in effect for several years before 2015, [were] in effect for every calendar day of 2015, 2016 and 2017 and continues to be in effect as of the signing of this affidavit." *Id.* at ¶¶ 1, 3. The Fitt Affidavit also states that the Guidelines were in effect in 2015, 2016, and 2017. Doc. No. 32-1 at ¶ 8.

Dumhart's statement about when the Guidelines became effective does not contradict the date on the first page of The Successful Recruit, as November 2015 falls within the effective dates referenced in her affidavit. *Id.* at ¶ 3; Doc. No. 36-7 at 2. As Plaintiff does not meet the Guidelines,

and Defendant presented evidence that the Guidelines were in effect when Plaintiff applied for positions with it, Defendant met its burden of production.

Because Defendant met its burden of production, Plaintiff must produce evidence that not hiring him because of his failure to meet the Guidelines is a pretext. *Wilson*, 376 F.3d at 1087. Plaintiff first argues that Defendant did not raise Plaintiff's inability to meet the Guidelines in its Answer. Doc. No. 36 at 2. Defendant's fourth defense asserted in the Answer is that its decisions "were based on legitimate non-discriminatory, non-retaliatory business reasons and were taken without regard to Plaintiff's race or color . . . ." Doc. No. 14 at 10. Plaintiff's failure to meet the Guidelines falls into the category of a legitimate non-discriminatory, non-retaliatory business reason.

Plaintiff's overriding argument that there is evidence that Defendant discriminated against him based on his race is his assertion that Defendant did not cancel his interviews or follow through with its job offers until after viewing Plaintiff's picture on his LinkedIn profile. *Id.* at 2; Doc. No. 11. Defendant, however, presents evidence that its employees viewed Plaintiff's LinkedIn profile both before and after it scheduled interviews with Plaintiff. Doc. No. 32-8; Doc. No. 32-2 at 180-82, 195-97. Plaintiff does not provide any evidence to contradict this. Plaintiff also argues that Defendant interviewed and hired applicants after the Guidelines were in place that did not meet them. Doc. No. 36 at 8. Plaintiff does not point to any evidence supporting this argument, either. In short, Plaintiff presents no evidence of racial animus. As Plaintiff fails to demonstrate that Defendant's refusal to interview or hire him based on not meeting the Guidelines is a pretext for racial discrimination, Defendant is entitled to summary judgment.

### C.  Count II Race Discrimination Via the Staffing Agency

Defendant argues that summary judgment should be granted on Count II regarding its alleged discrimination via the staffing agency because Plaintiff does not allege that the staffing agency discriminated against him based on race. Doc. No. 32 at 22. Instead, Plaintiff "alleges that staffing agencies referred [Plaintiff] for employment with [Defendant] on multiple occasions." *Id.* (citing Doc. No. 11 at ¶¶ 63, 69). Defendant states that its corporate representative "is unaware of any staffing agencies that discriminated against [Plaintiff] on the basis of race . . . ." *Id.* Plaintiff offers no argument or evidence disputing these reasons for granting summary judgment on Count II and does not address Count II in the Response. Doc. No. 36. Thus, summary judgment on Count II is appropriate. *See Liberty Lobby, Inc.,* 477 U.S. at 257; Fed. R. Civ. P. 56(c).

### D.  Count III Retaliation

Defendant argues that summary judgment is appropriate on Count III for Retaliation because there is no temporal connection between Defendant not offering Plaintiff a position and Plaintiff's protected activity, as the positions that Plaintiff applied for "were filled between seven and eleven months after [Plaintiff's] protected activity" and Defendant "did not formally reject [Plaintiff] until it hired an applicant for that position." Doc. No. 32 at 24. Plaintiff did not respond to Defendant's arguments regarding Count III. Doc. No. 36.

Additionally, Plaintiff did not establish a prima facie case of retaliation. One of the three elements of retaliation is that there is a causal relation between Plaintiff not being interviewed or hired and Plaintiff's filing of the EEOC charge and picketing Defendant's office. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010). Plaintiff offers no argument or evidence regarding this element in the Response. Doc. No. 36. Summary judgment is thus warranted on Count III. *See Liberty Lobby, Inc.,* 477 U.S. at 257; Fed. R. Civ. P. 56(c).

E.   Plaintiff's Miscellaneous Arguments

Plaintiff argues that summary judgment should not be granted because Defendant did not serve him with the Motion.[2] Doc. No. 36 at 3. Plaintiff states that he learned of the Motion "after receiving an Order from the Court regarding his Motion to Compel." *Id.* at 2. Plaintiff was able to file the Response, *id.*, which was duly considered, and does not argue that the lack of service precluded a more effective response. Plaintiff fails to demonstrate any prejudice he suffered by a lack of service of the Motion.

Plaintiff also argues that Defendant did not respond to his discovery requests. *Id.* at 2. Plaintiff's motion to compel discovery was filed beyond the discovery deadline, however, and thus was denied as untimely. Doc. No. 41.

## IV.   CONCLUSION.

As Defendant demonstrates that there is no genuine dispute as to a material fact and that it is entitled to judgment as a matter of law, it is recommended that the Motion (Doc. No. 32) be **GRANTED**.

---

[2] In the Reply, Defendant states that it "served the Motion for Summary Judgment on April 16, 2018 via U.S. Mail just as is indicated in the certificate of service of the Motion." Doc. No. 40 at 4. The Motion's Certificate of Service states the following, however:

> **I HEREBY CERTIFY** that on April 16, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing documents are being served this day on all counsel of record identified on the below Service List *in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner* for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Doc. No. 32 at 25 (emphasis added). The Service List includes Plaintiff's name, mailing address, and email address, but does not indicate whether the Motion was served via U.S. Mail. *Id.* No manner of service is specified for how Defendant served the Motion on Plaintiff.

- 13 -

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on July 20, 2018.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties