UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RUFUS LOVELL BROOKS,

    Plaintiff,

v.                                                           Case No. 6:17-cv-664-Orl-37GJK

MOBILITIE MANAGEMENT, LLC,

    Defendant.
_____

## **ORDER**

This case concerns the applicant-screening and hiring practices of Defendant Mobilitie Management, LLC, where Plaintiff Rufus Brooks applied to work. (Doc. 11.) After Defendant rejected Plaintiff's eighty-plus job applications, Plaintiff brought an Equal Employment Opportunity Commission ("**EEOC**") challenge of racial discrimination against Defendant. (*Id.* ¶ 7, 11.) When that failed, Plaintiff brought this Title VII action, asserting three claims: (1) racial discrimination by Defendant ("**Racial Discrimination Claim**"); (2) racial discrimination by Defendant's staffing agencies ("**Agency Discrimination Claim**"); and (3) retaliation by Defendant ("**Retaliation Claim**"). (*Id.* ¶¶ 93–104.)

Defendant now moves for summary judgment against Plaintiff. (Doc. 32 ("**Motion**").) Plaintiff filed a response in opposition (Doc. 36), and Defendant replied (Doc. 40). On referral, U.S. Magistrate Judge Gregory J. Kelly recommends granting the

Motion. (Doc. 42 ("**R&R**").) Plaintiff objected to the R&R (Doc. 45 ("**Objections**")),[1] and Defendant responded (Doc. 47).[2] On de novo review, the Court finds that the Objections are due to be overruled, the R&R adopted, and the Motion granted.

## I. BACKGROUND

Plaintiff is a sixty-eight-year-old African-American male with a bachelor's degree from the University of Texas and purportedly over forty years of experience working in the field of wireless telecommunications. (Doc. 11, ¶¶ 29–30; Doc. 32, p. 1.) Recently, his work history includes job-hopping between different telecommunications companies, including Sprint, AT&T, T-Mobile, Cellular South, Ericsson, Windstream, Micon, and West Tower. (*Compare* Doc. 32-2, pp. 95–112 (Plaintiff's deposition testimony regarding his work history), *with id.* at 358–64 (Plaintiff's resume), *and* Doc. 32-1, ¶ 17 (Defendant's understanding of Plaintiff's job history based on his application materials).) His last job lasted just one month and was back in 2014. (Doc. 32-2, pp. 111:15–112:21.)

After he lost that job, Plaintiff began searching for and applying to positions with SAC Wireless, Ericsson, and Defendant—the largest privately held wireless infrastructure company in the United States.[3] (Doc. 32-1, ¶ 6; Doc. 32-2.) Defendant was

---

[1] Plaintiff titled his Objections "Plaintiff's Objections to Magistrate Judge's Report and Recommendation, and Motion for Reconsideration." (Doc. 45.) But nothing in the filing reveals that Plaintiff is moving for reconsideration; therefore, the Court construes Plaintiff's filing as objections to the R&R only.

[2] In response to Plaintiff's Objections, Defendant asserts, *inter alia*, that because the Objections were untimely filed, the Court should not consider them. (Doc. 47, pp. 2–3.) Although untimely, the Court will nevertheless consider the Objections due to Plaintiff's *pro se* status.

[3] In total, Plaintiff submitted 500 job applications to various companies and received only three interviews and no job offers. (Doc. 32-2, pp. 114:20–119:10.)

expanding at that time and had a significant number of job openings across the country, including managerial and specialist positions in the telecommunications infrastructure industry. (Doc. 32-1, ¶ 13.) Plaintiff took advantage of the multitude of openings by applying to eighty-one positions with Defendant located throughout the country between August 2015 and March 2017. (*Id.* at ¶ 14.)

Although Defendant had many openings, it refused to hire just anyone. To attract and obtain highly qualified and diverse employees, Defendant's human resources department created a set of hiring guidelines known as "**The Successful Recruit**," which was in effect during Plaintiff's application period. (*Id.* at ¶ 8; Doc. 36-7; Doc. 40-1, ¶¶ 3–4.) The hiring guidelines ("**Guidelines**") include these requirements for all candidates: (1) a bachelor's degree or higher; (2) relevant industry experience based on the job description; (3) a history of job continuity of significant duration (more than twenty-four months at multiple employers); and (4) residence within a one-hour or fifty-mile commute of the jobsite. (Doc. 32-1, ¶ 8; *see also* Doc. 36-7.)

Defendant's applicant-screening and hiring practice involved a multi-tiered approach where employees would screen applications based on the Guidelines and recommended qualified individuals for interviews. (Doc. 32-1, ¶ 11.) To learn as much about applicants as possible, Defendant also preferred individuals provide the link to their LinkedIn profile, used to verify information on resumes; and a photo, used to gauge "professionalism." (Doc. 32-3, pp. 14–16; Doc. 32-4, pp. 13–14; Doc. 32-5, p. 16; Doc. 32-6, pp. 36–37; Doc. 32-7, pp. 42–44, 46.) Defendant instructed its recruiters and staffing agencies to review all application materials provided and reject applicants who failed to

meet the Guidelines. (Doc. 32-1, ¶ 11.) Due to the high number of applicants, occasionally unqualified individuals would receive potential interview notifications but would later be removed from the interview pool. (*Id.*) Ultimately, only the most qualified individuals, including those referred by Defendant's staffing agencies, were extended offers. (*Id.*)

According to Defendant, the applicant-screening process for Plaintiff went as follows: In screening Plaintiff's application materials to determine whether he met the Guidelines, Defendant's employees gleaned Plaintiff's education, his discontinuous work experience, and the location of his residence in Orlando, Florida. (*Id.* ¶ 16, 17.) Defendant's employees also viewed Plaintiff's LinkedIn profile to verify this information and further assess his qualifications. (*See* Doc. 32-8.) The record is devoid, however, of what information and picture of Plaintiff, if any, appeared on Plaintiff's LinkedIn profile when those employees viewed it. During this time, Defendant received and screened thousands of applications for the same positions. (Doc. 32-1, ¶ 24.) Like others, Plaintiff received emails from Defendant's recruiters requesting Plaintiff's availability for interviews, but those interviews never took place. (Doc. 11, ¶¶ 38–40; Doc. 32-2, pp. 162–66, 178–80; Docs. 36-8 — 36-9.) In one instance, Plaintiff was told to disregard the email for an interview because it was sent in error. (Doc. 32-4, ¶ 11; Doc. 36-9, p. 4.). In other instances, Defendant did not interview Plaintiff because it canceled the position, decided to use independent contractors, or was re-evaluating its hiring strategy. (Doc. 32-1, ¶ 29; Doc. 32-2, pp. 169–70, 179–81.)

The end result of the screening process was the same for each of Plaintiff's applications: Defendant never interviewed or hired Plaintiff for any of the positions to

which he applied because he failed to meet the Guidelines (specifically the job-continuity and geographic-proximity requirements), the position was never filled, or both. (Doc. 32-1, ¶¶ 18–23.) Of the eighty-one positions Plaintiff applied to, Defendant filled only forty-seven positions—with 38% of those hires being non-white. (*Id.* ¶¶ 25–26.) Only five of the eighty-one positions were in Florida, none of which were within one-hour or fifty miles of Plaintiff's residence. (*Id.* ¶ 15.) According to Defendant, the decision to not interview or hire Plaintiff had nothing to do with his race or his participation in protected activity. (*Id.* ¶¶ 18–23.)

Plaintiff tells a different story for why he wasn't hired: because he is African American. (*See* Doc. 11, ¶¶ 14–24, 29–91, 93–101.) Plaintiff contends that Defendant determined that he qualified for positions, emailed him to set up interviews, and provided him job offers. (Doc. 36, pp. 1–3, 6–12.) But before the interviews or start of the job, Defendant's employees viewed his LinkedIn profile, learned he is African American from his profile picture, and then canceled the interviews or rescinded the job offers. (Doc. 32-2, pp. 161:13–23, 166:23–168:8; Doc. 36, pp. 1–3, 6–12; Doc. 36-4; Docs. 36-8; Doc. 36-9.) Further, he alleges that after he filed his EEOC charge in December 2015 and picketed outside Defendant's office, Defendant retaliated by instructing its employees and staffing agencies not to consider Plaintiff for any positions with Defendant. (Doc. 11, ¶¶ 26–28, 102–04.) Therefore, Plaintiff initiated this *pro se* Title VII action to assert his Racial Discrimination Claim, Agency Discrimination Claim, and Retaliation Claim. (*See id.* ¶¶ 93–104.)

Defendant now moves for summary judgment on all three claims, arguing: (1) for

the Racial Discrimination Claim and Retaliation Claim, Plaintiff failed to establish a prima facie case of racial discrimination or retaliation and cannot show that Defendant's legitimate, nondiscriminatory reasons for refusing to hire him were pretextual; and (2) for the Agency Discrimination Claim, Plaintiff failed to allege or provide evidence that any of Defendant's staffing agencies discriminated against Plaintiff. (*See* Doc. 32.) Plaintiff counters that factual disputes exist to preclude summary judgment on the Racial Discrimination Claim, that Defendant's so-called legitimate, nondiscriminatory reasons for not hiring him were mere pretext for racial discrimination, and that Defendant failed to serve him with the Motion or respond to his discovery requests. (*See* Doc. 36.) His response does not contest Defendant's arguments refuting the Agency Discrimination Claim and Retaliation Claim. (*See id.*)

Magistrate Judge Kelly recommends granting Defendant's Motion. (Doc. 42.) Applying the *McDonnell-Douglas* framework, Magistrate Judge Kelly found that Plaintiff established a prima facie case of discrimination but that Defendant successfully provided legitimate, nondiscriminatory reasons for not hiring Plaintiff. (*Id.* at 8–9.) From there, he concluded that Plaintiff failed to meet his burden of showing that Defendant's proffered reasons were a pretext for racial discrimination. (*Id.* at 9–10.) Thus, Magistrate Judge Kelly concluded that Defendant is entitled to summary judgment on the Racial Discrimination Claim. (*Id.* at 10.)

As to the Agency Discrimination Claim, Magistrate Judge Kelly found, in light of Defendant's unrefuted evidence that Plaintiff did not allege any such discrimination and that it was unaware of any staffing agency that discriminated against Plaintiff because of

his race, Plaintiff did not establish a prima facie case of discrimination and that the claim could not survive summary judgment. (*Id.* at 11.) The same was true for Plaintiff's Retaliation Claim: Plaintiff could not establish a prima facie case because he did not show a sufficient causal relationship between his EEOC complaint and Defendant's failure to hire him. (*Id.*) Magistrate Judge Kelly then addressed two miscellaneous arguments against summary judgment that Plaintiff raised in his response: (1) that summary judgment should be denied because Defendant did not properly serve Plaintiff; and (2) that Defendant failed to respond to Defendant's discovery requests. (*Id.* at 12; *see also* Doc. 36, pp. 2–3.) Both were rejected. (Doc. 42, p. 12.) With that, Magistrate Judge Kelly concluded that summary judgment was due to be granted in favor of Defendant. (*Id.*)

Plaintiff then objected on three main grounds: First, Plaintiff objects to the factual findings in the R&R. (Doc. 45, pp. 2–6 ("**Factual Findings Objection**").) Second, Plaintiff objects to Defendant's purported failure to serve the Motion. (*Id.* at 6–7 ("**Service Objection**").). Third, Plaintiff objects to the legal conclusion that no genuine dispute of material fact exists regarding the Discrimination Claim. (*Id.* at 7–8 ("**Legal Conclusion Objection**").) As Defendant responded (Doc. 47), the matter is ripe for resolution.

## II. LEGAL STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v.*

*Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

### III. ANALYSIS

Plaintiff's first two objections attack the R&R's findings regarding multiple supposed material facts and service of the Motion. (*See* Doc. 45, pp. 1–7.) Plaintiff's third objection targets the R&R's application of the summary judgment standard to the established facts and its conclusion that summary judgment is appropriate. (*Id.* at 7–8.) The Court addresses each of these objections in turn.

#### A. Factual Findings Objection

Plaintiff's first challenge to the R&R focuses on fourteen factual findings, which he contends were incorrectly stated or omitted from the R&R. (Doc. 45, pp. 2–7.) But Plaintiff's proposed alterations are either incorrect or wholly immaterial to this action.

For starters, Plaintiff takes issue with the R&R's lack of facts regarding Defendant's use of LinkedIn and photos of applicants in its hiring process. (*Id.* at 2–3.) The R&R recognizes that Plaintiff's main argument for racial discrimination is that Defendant did not cancel interviews or withdraw job offers until after viewing his LinkedIn profile and learning that he is African American. (Doc. 42, p. 10.) But the R&R is clear that the evidence shows employees of Defendant viewed Plaintiff's LinkedIn profile both before and after contacting him regarding potential interviews. (*Id.* at 7, 10 (citing Doc. 32-8; Doc.

-8-

32-2, pp. 180–82, 195–97).) The R&R need not say more about Defendant's use of LinkedIn to resolve Plaintiff's claims of discrimination.

Plaintiff disagrees, arguing that the R&R should state that Defendant failed to deny using LinkedIn to screen applicants, failed to offer a "business reason" or other explanation as to why its employees viewed his LinkedIn profile, and asserted that its staffing agencies were required to submit photos of job applicants. (Doc. 45, pp. 2–3.) However, Plaintiff's assertions are belied by the record. Mr. Robert Fitt, Defendant's Senior Vice President of Human Resources, testified that Defendant's employees use LinkedIn to verify the information in an applicant's resume. (Doc. 32-7, pp. 42:24–44:8.) He also testified that Defendant preferred, not required, applicants and staffing agencies to submit photos of applicants as another way to gather information about them, such as whether they present themselves professionally. (*Id.* at 49:19–25; *accord.* Doc. 32-6, pp. 37:5–38:13 (explaining that photos were used to learn more about applicants, such as their degree of professionalism).) Even viewing the evidence in the light most favorable to Plaintiff, his alleged findings fail and, thus, should not have been included in the R&R.

Next, Plaintiff challenges the factual findings in the R&R that Defendant's hiring Guidelines, as outlined in The Successful Recruit, were in place during the relevant period. (Doc. 45, pp. 3–4.) The R&R, relying on two affidavits from Defendant's employees, establishes that the Guidelines were in place throughout all of 2015, 2016, and 2017, regardless of a November 2015 revised date stamp on the cover of the copy of The Successful Recruit submitted. (Doc. 42, p. 6 (citing Doc. 32-1, ¶ 8; Doc. 40-1, ¶¶ 1, 3); *see*

*also* Doc. 36-7.) Plaintiff's contrary conjectures about The Successful Recruit's creation date are simply wrong.[4]

Lastly, Plaintiff argues that the R&R should state that none of the deponents in this case testified about the existence of The Successful Recruit, the Guidelines, or Defendant's hiring policies. (Doc. 45, pp. 4–6.) From this, Plaintiff wants the Court to again make the leap that the Guidelines did not exist at the time Plaintiff applied, so his failure to meet them could not have been the real reason Defendant refused to hire him—creating room for a race-based reason for Plaintiff's rejection. However, the problem with this argument is that Plaintiff never asked the deponents about The Successful Recruit or the Guidelines (*see generally* Docs. 32-2—32-7); therefore, their silence about the Guidelines cannot speak louder than the sworn words in affidavits before this Court.[5] As the irrefutable evidence shows the Guidelines existed when Plaintiff applied, Plaintiff's argument must fail.

Beyond this, any other facts that Plaintiff submits are omitted from the R&R are wholly immaterial to the issues in this case and need not appear in the R&R. (*See* Doc. 45.) Thus, the Court overrules Plaintiff's Factual Findings Objection.

---

[4] Plaintiff argues that the R&R should also state that Defendant failed to submit a copy of The Successful Recruit into evidence. (Doc. 45, p. 3.) But that is irrelevant because Defendant submitted other evidence detailing the relevant Guidelines and Plaintiff submitted The Successful Recruit into evidence (*see* Doc. 36-7). Thus, the R&R need not include that fact.

[5] Plaintiff also mischaracterizes testimony to prove his point. (*See* Doc. 45, pp. 4–6.) Neither Ms. Inoue nor Ms. Macias testified that Defendant did not have any hiring policies or requirements. (*See* Doc. 32-4, pp. 7:6–13, 10:12–13, 18:13–21, 19:4–6; Doc. 32-5, pp. 8:22–11:21.)

### B. Service Objection

Plaintiff next finds erroneous the R&R's refusal to deny summary judgment due to Defendant's failure to serve the Motion. (Doc. 45, pp. 6–7.) This argument is bewildering. Plaintiff does not explain how service was faulty and he obviously received the Motion and responded in opposition. (*See id.*; *see also* Doc. 36.) Further, as Magistrate Judge Kelly found, Plaintiff failed to show prejudice. (*See* Doc. 42, p. 12.) Thus, the Court overrules the Service Objection.

### C. Legal Conclusion Objection

Plaintiff lastly objects to the R&R's conclusion that no genuine dispute of material fact exists regarding the Discrimination Claim and that Defendant is entitled to judgment as a matter of law. (Doc. 45, pp. 7–8.) Plaintiff maintains that he has evidence to show Defendant's legitimate, nondiscriminatory reason for refusing to hire him is pretextual—specifically because Defendant offered to interview him for a position and then abruptly canceled.[6] (*Id.*) Magistrate Judge Kelly rejected this argument and accepted Defendant's reasons as legitimate and nondiscriminatory because Plaintiff did not meet the Guidelines and did not present any evidence of racial animus. (Doc. 42, pp. 8–10.) On de novo review, the Court agrees.

---

[6] Plaintiff also argues that Magistrate Judge Kelly incorrectly disregarded or misapplied some of Plaintiff's exhibits (namely, Exhibits D, E, H, and G), which were filed in the incorrect order as part of his response. (Doc. 45, pp. 7–8.) Thus, he resubmitted the exhibits in the "correct" order as attachments to the Objections. (*Id.*) But Exhibit E to the Objections, which Plaintiff alleges shows that an employee of Defendant offered Plaintiff an interview and then cancelled it, is a copy of The Successful Recruit. (Doc. 45-4.) Thus, either Plaintiff's exhibits to the Objections are still in the incorrect order or he is citing to the wrong exhibit to support his assertions.

1. **Applicable Law**

Where, as here, the claim is Title VII employment discrimination, the "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). To that end, the Supreme Court has established a three-step, burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden "of establishing a prima facie case of racial discrimination." *Id.* at 802. Second, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Third, the burden shifts back to the plaintiff to "demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision"—a "pretext" for discrimination. *Id.* at 805. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804–05)).

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) it may simply point out an absence of evidence to support the nonmoving party's case; or (2) it may provide "affirmative evidence demonstrating that the

nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir. 1993)).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), so that "when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). Even so, "[the] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592-94 (1986)). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

2. **Plaintiff's Case**

At this stage of the proceedings, Defendant has accepted that Plaintiff has met his burden of showing a prima facie case of discrimination, so it offered legitimate,

nondiscriminatory reasons for not hiring Plaintiff. Thus, the burden is back on Plaintiff to show that Defendant's proffered reasons were pretext for discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 805. This is a high hill to climb, and Plaintiff is stuck at the bottom.

To meet this burden, Plaintiff must present more than mere speculation of racial discrimination—he needs competent evidence of a race-based motivation or reason to distrust Defendant's stated nondiscriminatory motivation. *See id.*; *see also Tex. Dep't of Cmty. Affairs*, 450 U.S. at 256. But none of Plaintiff's offered communications with Defendant regarding interview offers and cancelations demonstrate racial animus or create cause to doubt Defendant's stated reasons for refusing to hire Plaintiff. Rather, Defendant's reasons for not hiring Plaintiff—Plaintiff failed to meet the Guidelines, Defendant did not fill the position, or both (Doc. 32, pp. 16–17; Doc. 32-1, ¶ 18)—stand firm. In reality, the only support for Plaintiff's claim of pretext is his own subjective belief that Defendant did not hire him because he is African American, and a subjective belief will not suffice as support on summary judgment. *See Ellis*, 432 F.3d at 1326 ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Therefore, Plaintiff failed to meet his burden at step three of the *McDonnell-Douglas* framework, so Defendant is entitled to summary judgment. Accordingly, the Court overrules the Legal Conclusion Objection.

### IV. CONCLUSION

Having conducted an independent, de novo review of the portions of the record to which Plaintiff objected, the Court agrees with the findings and conclusions set forth

in the R&R. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Objections to Magistrate Judge's Report and Recommendation (Doc. 45) are **OVERRULED**.

2. U.S. Magistrate Judge Gregory J. Kelly's Report and Recommendation (Doc. 42) is **ADOPTED, CONFIRMED,** and made a part of this Order.

3. Defendant Mobilitie Management, LLC's Motion for Summary Judgment (Doc. 32) is **GRANTED**.

4. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Mobilitie Management, LLC and against Plaintiff Rufus Brooks.

5. The Clerk is **DIRECTED** to terminate all pending deadlines and to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on September 17, 2018.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro se* party